Birchard, C. J.,
dissenting. This case presents the naked question, whether a judgment rendered in a cause duly pending, shall operate as a lien on real estate, situate within the county, from the first day of the term at which it is rendered, including the first day, as fixed by law.
It is with regret that I find myself differing from the majority of the court at any time. Their opinions demand my respect. Yet however anxious I may be to come to any particular conclusion, I can not do it as a matter of choice.
I believe the decision just announced is unsound. The late learned chief judge who was with me when the case was originally decided, was also at the last session of this court after ful] argument, sincerely and advisedly of the same opinion. In stating the reasons which have operated upon my mind, I desire it to be understood that the doctrine is admitted that parts of days, may, in a proper case, be noticed for the prevention of injustice, nor do I understand that there is any difference between me and my brethren, as to the true meaning of the statute relating to mortgages.
We all hold, since the decision in Stansell v. Roberts, that a mortgage has no effect; that it is like an unexecuted contract, until it is filed with the recorder of the county for record. Such is the effect of the statute relating to mortgages. Again, we all agree that since the enactment of the statute, fixing the liens of judg *98 meats at law (many years older than the mortgage act), the courts and the bar have considered that the judgment lien took effect so as to include the first day of the term at which the judgment may have been rendered; that interest has over been computed to and from *that day. We know of no conflicting decision and there is no disagreement on this point.
Now with these facts and premises, upon which there is no division of opinion, I can not conceive that the lien of this judgment is junior to the lion of the mortgage. It does seem to follow that the first is some eight hours older than the latter. Both are legal liens. Both stand upon their respective legal rights, and both depend upon positive enactments which no court ought to gainsay.
This is not a case where a mere legal fiction is attempted to be interposed to defeat a prior equitj1'. It is a case where an older legal right is given to a bona fide judgment by a positive statute in express terms, and to which all the cases, cited to prove that a day may be divided to prevent a legal fiction from working injustice, are either wholly inapplicable, or they prove, by strong analogy, the unsoundness of the application which has just been made of them.
Adjudicated cases have been cited also to prove that a lien attaching at a particular hour of a day, shall be preferred to a lion attaching of the day generally. Admitting the soundness of these decisions and applying correctly the principle doducible from them, and the mortgage lien must yield, because the judgment lien took effect on the first hour of the term of the court, and the mortgage on the eighth hour of the same term. These cases sustain my views.
The terms of the courts are matters of law, of which all the people of the state are bound to take notice. To learn when they commence, the statute only need be looked to. The legislature intended to leave no room for dispute here. But the hour when the court may have actually commenced its session is very uncertain. It may have been at one o’clock in the morning, or at eleven o’clock at night, or at any intermediate hour. In many counties the records will only show that the terms of the courts commenced on the days prescribed by law, without any mention of the hour of the day at which the judges and officers convened. Is it so, then, that the party taking a judgment, at a term when no *99 *court was convened until the afternoon of the first day, or perhaps the second or third day of the term, is liable to be defeated by deeds and contracts entered into after the time fixed by statute for the beginning of the term ? Can the judgment creditor make no levy with safety upon the real estate of his creditor, without first iaquiring of the clerk, constable, juror, or bystander, at what hour the sheriff may have proclaimed the opening of the court? Must he litigate this uncertain fact with any and every mortgagee, vendee, and grantee of the judgment debtor, and prevail in settling the disputed hour in his favor, or submit to have his creditor’s real estate swept away from him by a conveyance, mortgago, contract, or other claim entered into at one in the afternoon, because the court did not happen to convene till the hour of two? If a ci’oditor can bo defeated on execution in this way under our law, it is a new thing, and contrary to all our former impressions and all the practice of members of the bar for many years. This question is of too serious import to be passed over lightly, and without a dissent. It should not be treated as a legal fiction in the way of justice.
The opportunities of embarrassing creditors in the legal pursuit of their honest demands, have heretofore been sufficiently numerous. The means of committing fraud have ever been sufficiently ample. I can not but believe that a new door for gross fraud, and difficult of detection, will be needlessly opened by the rule now established, and that it will be hereafter somewhat improved, to the prejudice of the morals, the peace, and of the best interests of the public generally, as well as to the injury of individual judgment creditors. For these, and the reasons alluded to by counsel, and for other reasons that might be given, it is out of my power to concur in reversing the decree of this court, which was made upon the circuit, and made, too, deliberately, after full argument.
It may be hard for this mortgagee to lose the benefit of his security. But a hard case is a poor excuse for establishing a bad precedent. It is merely saving one man from misfortune, by visiting evils upon the whole community.
*1 do not desire to dwell long upon this subject. Yet there is one other view of the case which has force with me.» The entire usage of the state to the present time has been in accordance with the views that I have stated.
*100 Whore this change of construction (for it is in effect that) of an old statute, will stop, or to what extent it may operate to defeat titles acquired under sales upon execution, no one can easily foresee. That its effect will be disastrous in some cases is not to be doubted. To guard against any disturbance of rights fairly acquired, and in accordance with the long-continued and general practice of those learned in the law, I would adhere to the old rules with tenacity, and yield them only when forced by reasons such as could not be resisted.